# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.  5:14-CR-300 |
| Plaintiff-Respondent, | ) JUDGE DAN AARON POLSTER |
| v. | ) |
| GREGORY MAYS, | ) **OPINION & ORDER** |
| Defendant-Petitioner. | ) |

On June 27, 2025, Defendant-Petitioner Gregory Mays filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 78. The Government filed a response in opposition on September 8, 2025. ECF 80. Mays' reply in support of his motion was filed on September 18, 2025. ECF 82. Pursuant to the Court's order, the Government filed its sur-reply on September 29, 2025. ECF 83. For the reasons discussed herein, Mays' motion is **DENIED**.

**I. BACKGROUND**

On November 13, 2014, Mays was charged with one count of sexual exploitation of children and one count of coercion and enticement of a 14-year-old girl to engage in illicit sexual activity with him. ECF 15. These offenses carried a statutory mandatory minimum imprisonment sentence of 180 months. Subsequently, on July 13, 2015, he entered into a conditional plea agreement whereby he would plead guilty to both counts of the indictment. Mays was sentenced on February 10, 2016, to a term of 210 months of imprisonment. ECF 50.

Mays previously filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) and Guideline Amendment 821 ("821 Motion") on February 26, 2024. However, because this Court had already determined that Mays was a Criminal History Category II, he was facially ineligible

for a sentence reduction under Amendment 821 and the Court denied his motion. ECF 77. Particularly relevant here, though, is that the Court further noted that even if Mays had been eligible, it would not give him the reduction "due to the nature and circumstances of his offenses and the risk he poses to the community and public safety." *Id.*

Mays is presently housed at Federal Correctional Institution ("FCI") Elkton, with a projected release date of January 22, 2030.[1] He is now 64 years old. *Id.*

In February 2024, Mays reported to FCI Elkton's medical unit that he had been urinating blood (also known as hematuria) for the last two days. ECF 78-2 at 6. Blood was found in Mays' urine on February 23, 2024. *Id.* at 7. Blood was also found during a fecal occult screening on April 1, 2024. *Id.* at 8. A urologist at the Comprehensive Urology Institute in Salem, Ohio, found two cancerous tumors in Mays' bladder on July 30, 2024. *Id.* at 10. It was recommended that he undergo a transurethral resection ("bladder resection"), *id.*, to attempt to excise the tumors; the bladder resection occurred on September 26, 2024. *Id.* at 15-16. However, the procedure was not able to successfully remove all of the tumor, so that doctor recommended a cystectomy to remove Mays's bladder as a means of removing the entirety of the tumor. *Id.* at 16.

Mays was seen at the Glickman Urological and Kidney Institute of the Cleveland Clinic for a second opinion on October 29, 2024. *Id.* at 19-22. A cystectomy was again recommended, which Mays was adamant that he did not want. *Id.* at 20. Instead, Mays opted for another bladder resection, despite being warned of the risk that the procedure would not be able to clear the tumors in their entirety. *Id.* at 20-21. The procedure was performed at the Cleveland Clinic on December 18, 2024; however, once again, the surgical team was unable to remove the entire tumor. *Id.* at 25-26.

---

[1] Bureau of Prisons Inmate Locator, available at https://www.bop.gov/inmateloc/ (last accessed Oct. 7, 2025).

At a follow-up appointment at the Cleveland Clinic on January 30, 2025, a cystectomy was again recommended due to the difficulty of the prior bladder resection. *Id.* at 31. Mays was also informed that multiple bladder resections could be required to clear the present tumor, though even that "may not even clear the tumor." *Id.* Mays again was "adamant against cystectomy," and a third bladder resection was performed on March 20, 2025. *Id.* 31-32.

Mays was again recommended a cystectomy at an April 24, 2025, appointment. *Id.* at 34. Additionally, a biopsy of the excised tumor bits from the most recent bladder resection revealed an "aggressive pathologic diagnosis," underscoring the importance of needing to remove the entirety of the tumor via cystectomy. *Id.* The urologist noted that "[Mays] is adamant against this and understands potential risks of this. He would like to proceed with repeat resection of his bladder tumor. I discussed if we cannot clear him with this resection, then I would consider that it is not worth additional attempts." *Id.* A fourth bladder resection was completed on May 16, 2025. *Id.* at 39.

Though Mays believed that the May 2025 procedure "removed the existing tumor," he continued to be concerned about the possibility of the cancer returning. ECF 78 at 9. At a June 6, 2025, follow-up appointment, Mays informed the Bureau of Prisons ("BOP") that he wanted to explore his options for chemotherapy treatment. ECF 80-2 at 8. Just three days later, on June 9, 2025, the BOP arranged for Mays to see an oncologist at the Cleveland Clinic on September 30, 2025. *Id.* at 7. Mays was informed about his scheduled appointment with an oncologist no later than June 11, 2025. *Id.* at 5.

## II. LEGAL STANDARD

Generally, once a district court pronounces a sentence, it may not be modified. 18 U.S.C. § 3582(b)-(c). However, a court may reduce a sentence upon a finding of "extraordinary and

compelling circumstances." 18 U.S.C. § 3582(c)(1)(A)(i). While Congress did not define "extraordinary and compelling reasons," the Sixth Circuit has held that it is the role of the Sentencing Commission to issue "'general policy statements . . . describing what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. McCall*, 56 F.4th 1048, 1053 (6th Cir. 2022) (quoting 28 U.S.C. § 994(t)); *see also* U.S.S.G. § 1B1.13 (identifying subsets of circumstances that may constitute "extraordinary and compelling reasons"). A defendant may move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (cleaned up) (citing 18 U.S.C. § 3582(c)(1)(A)). If a defendant, rather than the BOP, files the motion with the Court, then the district court enjoys wide discretion to identify what constitutes extraordinary and compelling reasons under the statute. *United States v. Jones*, 980 F.3d 1098, 1109-11 (6th Cir. 2020). Even if the defendant can establish extraordinary and compelling reasons, the Court must also consider the factors set for in 18 U.S.C. § 3553(a), to the extent that they are applicable. § 3582(c)(1)(A).

The defendant bears the burden of showing they are eligible for a sentence modification. *United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (the defendant bears the burden to show eligibility for reduction of sentence under Section 3582(c)(2)).

### III. ANALYSIS

Mays argues that he qualifies for compassionate release based on extraordinary and compelling circumstances as identified in U.S.S.G. §§ 1B1.13(b)(1)(B)-(C). These sections of the Sentencing Guidelines apply when the defendant is "suffering from a serious physical or medical

condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" or when the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," respectively. According to Mays, even though his bladder cancer has not been deemed terminal at this stage, compassionate release is appropriate because "[t]he prison has been slow arranging appointments for him" and "clearly lacks the ability to provide him the care he needs." ECF 78 at 10. This is compounded by the fact that Mays is required to go to the Cleveland Clinic for some of his treatment, "which is a significant distance from FCI Elkton." *Id.* He notes that he has been urinating blood "since February of 2024, over sixteen months now" and trying to get his tumors removed for the past ten months. *Id.* at 9.

There is certainly no doubt that Mays suffers from a serious health condition that causes him significant health issues. However, as the Government points out, a delay in care or the need for a lengthy course of treatment is not the same thing as not receiving care at all. ECF 83 at 2-3. In the sixteen months since symptoms of Mays' bladder cancer presented themselves, Mays has had four separate bladder resection surgeries to remove existing tumors. At each of the appointments leading up to these surgeries, Mays' doctors stressed to him that a bladder resection was unlikely to complete remove his tumors and recommended a different course of action in order to increase the chances of complete removal. And at every one of these appointments, Mays rejected the recommendation for a cystectomy and requested to move forward with bladder resections. It is his right to decide how he would like to move forward with his medical treatment, but the BOP is not at fault for any of the resulting consequences of these decisions.

The only actual deficiency in treatment that Mays alleges is a supposed lack of referral to an oncologist or otherwise receiving chemotherapy or radiation treatment to prevent future tumors. ECF 78 at 9. Mays states, as of the filing of his motion on June 27, 2025, he "wants to receive chemotherapy or radiation, but has yet to see an oncologist. In fact, he has been asking the prison medical staff when he is going to see an oncologist, and they told him it will be months before he can even see an oncologist for a consultation." *Id.* However, Mays' medical records clearly state that he was seen by a BOP clinician on June 9, 2025, who—that same day—entered a request for an oncology consultation, with the appointment to take place on September 30, 2025. ECF 80-2 at 7. The BOP Health Services report from a June 11, 2025, notes that Mays was "[a]dvised that he has a consultation in place for an oncology consult at CCF" during that visit. ECF 80-2 at 5. That oncology consult was rewritten on July 22, 2025, so that Mays would see oncology at the Cleveland Clinic on the same day it had been previously scheduled for (September 30). *Id.* at 1. Mays was presumably informed of this date at both his June 9 and July 22 visits with the BOP clinician. Even if he was not, this date was included in the unredacted copies of Mays' medical records filed with the Government's response on September 8, 2025. *See generally* ECF 80-2. This date has now passed, and presumably Mays attended his oncology consultation at the Cleveland Clinic two weeks ago because there has been no supplemental filing from either party suggesting the contrary. That it took up to three months from his initial request for Mays to actually see an oncologist, as requested, does not mean, as Mays asserts, that the BOP "has not allowed him to see an oncologist" over that time period. ECF 82 at 4.

Receiving medical treatment for a serious condition, like bladder cancer, can take time, even under the most ideal of circumstances. Mays has not put forth any evidence to suggest that the BOP has intentionally caused delays in his treatment or refused to schedule specialist

6

consultations on his behalf. Nor does Mays argue that the BOP has caused him to not receive any treatment whatsoever for his existing health conditions. If anything, Mays' own motion, where he states that he believes the May 2025 bladder resection "removed the existing tumor," ECF 78 at 9, and his medical records suggest that the treatment he has received thus far as been successful. That his bladder cancer may, at some indeterminate point in the future, evolve to a point where the BOP is not able to treat it is not "extraordinary and compelling" reasoning justifying a sentence reduction under the Sentencing Guidelines.

Even if the Court were inclined to believe that there was an "extraordinary and compelling" reason making Mays eligible for compassionate release, the Court must still find that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission" and consider "all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States vs. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). Just last year, this Court reevaluated Mays' sentence under the Section 3553(a) factors and found that they "weigh heavily against" reducing Mays' sentence. ECF 77 at 5. The Court specifically cited "the nature and circumstances of his offenses and the risk he poses to the community and public safety." *Id.* at 4. The Government correctly notes, and Mays has not shown any evidence to the contrary, that the circumstances between the Court's order last year and now have not changed in any way so as to affect its evaluation of the Section 3553(a) factors.

The only counterargument that Mays puts forth is that, in light of his age and medical conditions, "any criminality is behind him." ECF 82 at 7 (noting that Mays "is now a 64-year-old man with numerous and serious health problems" and "[h]is only goals are to return home to receive the treatment and to take care of his elderly mother"); *see also* ECF 78 at 11 (noting that "[n]ow, age 64, [Mays] is a different person and is not a threat to the community" and "[g]iven his

7

age and his health conditions, the § 3553(a) factors support the requested reduction"). The Court is not persuaded that this is a meaningful change in the underlying facts for a Section 3553(a) analysis. Even if the Court were inclined to believe that Mays' age and health make him less of a threat to the public—and it does not[2]—this is not the only Section 3553(a) factor that the Court must consider. In light of no other arguments suggesting that the analysis of those factors has changed, the Court finds that the Section 3553(a) factors continue to counsel against early release.

## IV. CONCLUSION

The Court finds that Mays is ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). And even if he were eligible, the Section 3553(a) factors weigh against his requested relief. Accordingly, the Court DENIES Mays's motion for sentence reduction.

**IT IS SO ORDERED.**

**Date: October 15, 2025**

*/s/ Dan A. Polster*
**Dan Aaron Polster**
**United States District Judge**

---

[2] Mays pled guilty to offenses involving the sexual exploitation of children and coercion or enticement of a minor female. As the Government aptly points out, "[s]exual exploitation of children is not a crime only young men can commit." ECF 83 at 3-4.